TROUTMAN SANDERS LLP
Kevin F. Kieffer, Bar No. 192193
kevin.kieffer@troutman.com
Ross Smith, Bar No. 204018
ross.smith@troutman.com
5 Park Plaza, Suite 1400
Irvine, CA  92614-2545
Telephone:    949.622.2700
Facsimile:    949.622.2739

Joseph A. Hinkhouse (IL 6199305)
Colleen P. Sorensen (IL 6287454)
Michelle L. Goyke (IL 6316938)
(pro hac vice admissions pending)
HINKHOUSE WILLIAMS WALSH LLP
180 N. Stetson Avenue, Suite 3400
Chicago, IL 60601
jhinkhouse@hww-law.com
csorensen@hww-law.com
mgoyke@hww-law.com
Telephone: 312.784.5400
Facsimile: 312.784.5499

*Attorneys for Plaintiff*
*Navigators Specialty Insurance Company*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAVIGATORS SPECIALTY INSURANCE COMPANY,<br><br>                    Plaintiff,<br><br>v.<br><br>DEPOMED, INC. n/k/a ASSERTIO THERAPEUTICS, INC.,<br><br>                    Defendant. | Case No.   3:19-cv-255<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Complaint for Declaratory Judgment

## COMPLAINT FOR DECLARATORY JUDGMENT

Navigators Specialty Insurance Company ("Navigators"), by and through its counsel, hereby files this Complaint for a declaratory judgment against Depomed, Inc., now known as Assertio Therapeutics, Inc. ("Depomed"), and states as follows:

## NATURE OF THE ACTION

1. This action involves a dispute regarding insurance coverage for at least thirty-eight lawsuits brought against Depomed between March 2018 and December 2018 alleging that Depomed and other manufacturers engaged in a scheme to increase prescription opioid sales and associated profits by knowingly making false and unsupported representations regarding the effectiveness of opioids for long-term pain relief and concealing information about the risks of addiction (collectively, the "Opioid Lawsuits").

2. Navigators issued two claims-made Products-Completed Operations Liability Policies to Depomed for annual periods from April 2, 2017 to April 2, 2018 (the "2017 Policy") and April 2, 2018 to April 2, 2019 (the "2018 Policy").

3. Depomed has tendered the Opioid Lawsuits to Navigators for defense and indemnity.

4. Subject to their terms, conditions and exclusions, the 2017 and 2018 Policies apply to **damages** that an **Insured** becomes legally liable to pay for **products-completed operations hazard claims** first made during its **policy period**.

5. The 2017 and 2018 Policies define **products-completed operations hazard claims** as **claims** alleging **bodily injury** or **property damage** and arising out of an **occurrence**. The Policies further define **occurrence** as an accident.

6. The Opioid Lawsuits do not seek **damages** for a **claim** alleging **bodily injury** or **property damage** caused by an **occurrence**. Instead, they seek economic losses, restitution, disgorgement, multiplied damages, civil and criminal penalties, and equitable relief based upon Depomed's allegedly intentional wrongdoing. Therefore, they are not covered under the 2017 or 2018 Policy.

7. Further, only three of the Opioid Lawsuits were first made during the 2017 Policy's **policy period**.

8. The remaining Opioid Lawsuits were made during the 2018 Policy's **policy period**, and the 2018 Policy contains an exclusion for "**[b]odily injury**, **property damage**, **personal and advertising injury**, loss arising out of, resulting from, . . . or in any way related to . . . [t]he actual or alleged use, abuse, misuse, illicit use, overuse, overdose, unlawful distribution, diversion, risks of, and/or addiction to any" opioids or narcotics (the "Opioid Exclusion"). The Opioid Exclusion precludes coverage for the Opioid Lawsuits.

9. Navigators thus seeks a declaration that it has no duty to defend or indemnify Depomed in the Opioid Lawsuits under the 2017 or 2018 Policies.

## PARTIES

10. Navigators is a corporation organized under the laws of the state of New York, with its principal place of business in New York, New York.

11. At all times relevant to the negotiation and purchase of the 2017 Policy and the 2018 Policy, Depomed was a corporation organized under the laws of the state of California, with its principal place of business in Newark, California.

12. In August 2018, Depomed merged with and into Assertio. Assertio is a corporation organized under the laws of the state of Delaware with its principal place of business in Lake Forest, Illinois.

## JURISDICTION AND VENUE

13. **Jurisdiction**. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. The matter in controversy arises between citizens of different states, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

14. Declaratory relief is authorized pursuant to 28 U.S.C. § 2201.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because at all times relevant to this action the defendant resided in this District.

16. **Intradistrict Assignment**. Assignment to the San Francisco Division or Oakland Division of the Court is proper pursuant to Civil L.R. 3-2(c) because each division serves

Alameda County and San Francisco County, the counties in which this action arises. The 2017 and 2018 Policies were issued to defendant Depomed in Alameda County or San Francisco County, and, therefore, this is where a substantial part of the underlying events giving rise to this lawsuit occurred or in which a substantial part of the property that is the subject of the action is situated.

## THE OPIOID LAWSUITS

17. Depomed is a pharmaceutical company that develops and markets prescription drugs, including prescription opioids.

18. At least thirty-eight Opioid Lawsuits have been filed against Depomed and other manufacturers and distributors of prescription opioids ("Underlying Defendants") by States, Counties and municipalities, as well as third-party payors ("Underlying Plaintiffs").

19. The Opioid Lawsuits assert that Underlying Defendants engaged in an intentional and deceptive marketing campaign to promote the use of prescription opioids and that their conduct has resulted in a national epidemic of opioid overdose deaths and addictions.

20. According to the Underlying Plaintiffs, before the 1990s, opioids were used to provide short-term postoperative care or for palliative care; opioids were not used to treat chronic pain.

21. The Underlying Plaintiffs allege that Underlying Defendants engaged in a deceptive marketing scheme designed to persuade doctors and patients that opioids can and should be used for chronic pain by:

    a. downplaying the serious risk of addiction;

    b. creating and promoting the concept of "pseudoaddiction" by advocating that signs of addiction should be treated with more opioids;

    c. exaggerating the effectiveness of screening tools to prevent addiction;

    d. claiming that opioid dependence and withdrawal are easily managed;

    e. denying the decreased effectiveness of opioids over long-term use and the corresponding need for increased dosages; and

  f. exaggerating the effectiveness of "abuse-deterrent" opioid formulations to prevent abuse and addiction.

22. The Underlying Plaintiffs allege that the Underlying Defendants made these false representations directly to doctors and patients through advertising campaigns and "detailers" (sales representatives who directly targeted doctors).

23. They further allege that Underlying Defendants marketed their products indirectly to avoid FDA scrutiny and regulation. They did this through seemingly unbiased and independent third parties, including key opinion leaders ("KOLs") (seemingly independent doctors) and professional societies and patient advocacy groups ("Front Groups") funded by Underlying Defendants. They also used "unbranded advertising" (promoting the general use of opioids without naming a specific drug) and manipulated published promotional materials about opioids in scientific literature to avoid FDA regulation and to give the false appearance that these were independent organizations outside of the Underlying Defendants' control.

24. The Underlying Plaintiffs allege that they paid for unnecessary and ineffective opioid treatments based on these false representations.

25. The Underlying Plaintiffs further allege that they sustained economic damages for increased costs in treating addiction, increased law enforcement and public safety costs to combat addiction, and increased costs in caring for children whose parents suffer from opioid related disability or incapacitation.

26. They seek the following types of damages: compensatory and punitive damages; injunctive relief; declaratory relief; restitution; disgorgement; treble damages; civil and criminal penalties; and attorney's fees and costs.

27. The Opioid Lawsuits include:

  a. *City of Rome, et al. v. Purdue Pharma L.P., et al.*, Case No. 4:18-cv-00052-MHC, filed March 2, 2018 in the U.S. District Court for the Northern District of Georgia, transferred to the U.S. District Court for the Northern District of Ohio, Case No. 1:18-op-45282-DAP;

b. *State of Arkansas, et al. v. Purdue Pharma, L.P., et al.*, Case No. CV 2018-268, filed March 15, 2018 in the Circuit Court of Crittenden County, Arkansas;

c. *Family Practice Clinic of Booneville, Inc., et al. v. Purdue Pharma L.P., et al.*, Case No. 6:18-cv-00087-GFVT, filed March 21, 2018 in the U.S. District Court for the Eastern District of Kentucky, transferred to the U.S. District Court for the Northern District of Ohio, Case No. 1:18-op-45390-DAP;

d. *Medical Mutual of Ohio v. Purdue Pharma, L.P., et al.*, Case No. 1:18-op-45307-DAP, First Amended *Complaint* filed April 26, 2018 in the U.S. District Court for the Northern District of Ohio;

e. *Philadelphia Federation of Teachers Health and Welfare Fund v. Endo Pharmaceuticals, Inc., et al.*, *Case* No. 180403891, filed April 26, 2018 in the Court of Common Pleas, Philadelphia County, Pennsylvania;

f. *Fiscal Court of Owen County, Kentucky v. Purdue Pharma L.P., et al.*, Case No. 1:18-op-45534-DAP, filed May 4, 2018 in the U.S. District Court for the Northern District of Ohio;

g. *Fiscal Court of Bourbon County, Kentucky v. Purdue Pharma L.P., et al.*, Case No. 1:18-op-45533-DAP, filed *May* 4, 2018 in the U.S. District Court for the Northern District of Ohio;

h. *Jay Brodsky v. Purdue Pharma L.P., et al.*, Case No. CV18-2788, filed May 7, 2018 in the U.S. District Court for the Eastern District of New York;

i. *County of Bexar v. Purdue Pharma L.P., et al.*, Case No. 2018-CI-08728, filed May 10, 2018 in the District Court of *Bexar* County, Texas, 224th Judicial District;

j. *Gwinnett County, Georgia v. Purdue Pharma L.P., et al.*, Case No. 1:18-cv-02078-ELR, filed May 11, 2018 in the U.S. *District* Court for the Northern District of Georgia;

k. *Clark County v. Purdue Pharma, L.P., et al.*, Case No. A-17-765828-C, First Amended Complaint filed May 16, 2018 in the District Court, Clark County, Nevada;

l. *Iron Workers District Council of Philadelphia and Vicinity, Benefit Fund v. Abbott Laboratories, Inc., et al.*, Case No. *180502442*, filed May 23, 2018 in the Court of Common Pleas, Philadelphia County, Pennsylvania;

m. *County of San Patricio v. Purdue Pharma L.P., et al.*, Case No. S-18-5625CV-A, filed June 28, 2018 in the District Court *of* San Patricio County, Texas, 36th Judicial District;

n. *County of Nueces, et al. v. Purdue Pharma L.P., et al.*, Case No. 2018CCV-61176-4, filed July 3, 2018 in the Nueces Law Court of *Nueces* County, Texas;

o. *Village of Herkimer, New York v. Purdue Pharma, L.P., et al.*, Case No. 6:18-cv-00797-GLS-TWD, filed July 5, 2018 in the U.S. District Court for the Northern District of New York;

p. *Bon Secours Health System, Inc. Our Lady of Bellefonte Hospital, Inc., et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-*45819*-DAP, filed July 11, 2018 in the U.S. District Court for the Northern District of Ohio;

q. *Bon Secours Health System, Inc. Bon Secours-Richmond Community Hospital, Inc., et al. v. Purdue Pharma L.P., et al.*, Case No. 1:18-op-45820-DAP, filed July 12, 2018 in the U.S. District Court for the Northern District of Ohio;

r. *Bon Secours Health System, Inc. Bon Secours-St. Francis Xavier Hospital, Inc., et al. v. Purdue Pharma L.P., et al.*, Case No. 1:18-op-45821-DAP, filed July 12, 0218 in the U.S. District Court for the Northern District of Ohio;

s. *Bon Secours Health System, Inc. and Bon Secours Hospital Baltimore, Inc. v. Purdue Pharma L.P., et al.*, Case No. 1:18-op-45822-DAP, filed July 12, 2018 in the U.S. District Court for the Northern District of Ohio;

t. *City of Covington, Kentucky v. Purdue Pharma, L.P., et al.*, Case No. 2:18-cv-00131-GFVT, filed July 24, 2018 in the U.S. District Court for the Eastern District of Kentucky;

u. *Jefferson County, et al. v. Purdue Pharma L.P., et al.*, Case No. 1822-CC10883, filed August 1, 2018 in the Missouri Circuit Court, Twenty-Second Judicial District;

v. *Tucson Medical Center v. Purdue Pharma L.P., et al.*, Case No. C20184213, filed August 22, 2018 in the Superior Court *of* the State of Arizona, Pima County;

w. *Davis County v. Purdue Pharma L.P., et al.*, Case No. 18070080, filed August 28, 2018 in the Second Judicial District *Court*, Davis County, State of Utah;

x. *City of Reno v. Purdue Pharma, L.P., et al.*, Case No. CV18-01895, filed September 18, 2018 in the Second Judicial *District* Court of the State of Nevada, Washoe County;

y. *Fiscal Court of Wolfe County, Kentucky v. Purdue Pharm L.P., et al.*, Case No. 1:18-op-46099-DAP, filed September 26, *2018* in the U.S. District Court for the Northern District of Ohio;

z. *Fiscal Court of Lee County, Kentucky v. Purdue Pharma L.P., et al.*, Case No. 1:18-op-46100-DAP, filed September 26, *2018* in the U.S. District Court for the Northern District of Ohio;

aa. *City of Syracuse, New York v. Purdue Pharma, L.P., et al.*, Case No. 5:18-cv-1184 (GTS/DEP), filed October 1, 2018 in the U.S. District Court for the Northern District of New York, transferred to the U.S. District Court for the Northern District of Ohio, Case No. 1:18-op-46169-DAP;

bb. *Terry Robertson v. Mallinckrodt PLC, et al.*, Case No. 1822-CC11422, filed October 15, 2018 in the Missouri Circuit *Court*, Twenty-Second Judicial District;

cc. *Western Pennsylvania Electrical Employees Insurance Trust Fund v. Endo Pharmaceuticals, Inc., et al.*, Case No. *181002038*, filed October 16, 2018 in the Court of Common Pleas, Philadelphia County, Pennsylvania;

Complaint for Declaratory Judgment      - 8 -

dd. *Iron County v. Purdue Pharma, L.P., et al.*, Case No. CV180500149, filed October 26, 2018 in the Fifth Judicial District *Court*, Iron County, Utah;

ee. *Carroll County v. Purdue Pharma, L.P, et al.*, Case No. 3:18-cv-00131-TCB, filed November 2, 2018 in the U.S. District *Court* for the Northern District of Georgia, transferred to the U.S. District Court for the Northern District of Ohio, 1:18-op-46269;

ff. *San Juan County v. Purdue Pharma L.P., et al.*, Case No. 180700011, filed November 6, 2018 in the Seventh Judicial *District* Court, San Juan County, Utah;

gg. *Grand County v. Purdue Pharma L.P., et al.*, Case No. 180700040, filed November 8, 2018 in the Seventh Judicial *District* Court, Grand County, Utah;

hh. *Millard County v. Purdue Pharma L.P., et al.*, Case No. 180700044, filed November 9, 2018 in the Fourth Judicial *District* Court, Millard County, Utah;

ii. *Sanpete County v. Purdue Pharma L.P., et al.*, Case No. 180600095, filed November 13, 2018 in the Sixth *Judicial* District Court, Sanpete County, Utah;

jj. *City of Utica, New York v. Purdue Pharma, et al.*, Case No. 6:18-cv-01394-BKS-ATB, filed November 30, 2018 in *the* U.S. District Court for the Northern District of New York;

kk. *Appalachian Regional Healthcare, Inc. v. Purdue Pharma, et al.*, Case No. 18-CI-00512, filed December 5, 2018 in the *Circuit* Court, Perry County, Kentucky; and

ll. *Nichole Poleski v. Mallinckrodt PLC, et al.*, Case No. 1822-CC11898, filed December 20, 2018 in the Missouri Circuit Court, Twenty-Second Judicial District.

28. Attached hereto as Exhibits A1 to A38 are true and correct copies of the complaints filed to date in the Opioid Lawsuits.

## THE POLICIES

29. Navigators issued GLS Elite Products-Completed Operations Liability Coverage policy number OC17LGL0A3B7LNC to Depomed for the period from April 2, 2017 to April 2, 2018. Attached hereto as Exhibit B is a copy of the 2017 Policy.

30. Navigators issued GLS Elite Products-Completed Operations Liability Coverage policy number OC18LGL0A3B7LNC to Depomed for the period from April 2, 2018 to April 2, 2019. Attached hereto as Exhibit C is a copy of the 2018 Policy.

31. The limits of liability of the Policies are $10,000,000 per **claim** and $10,000,000 in the aggregate.

32. Coverage under the 2017 Policy is subject to a deductible of $100,000 per **claim** and $500,000 in the aggregate.

33. Coverage under the 2018 Policy is subject to a deductible of $250,000 per **claim** and $1,250,000 in the aggregate.

34. The Insuring Agreement of the Policies provides that Navigators will pay "amounts in excess of the deductible or retention up to the limit of liability for **damages** that an **Insured** becomes legally liable to pay as a result of a **products-completed operations hazard claim**."

35. The Policies define **damages** as:

> judgments; awards; and settlements, but only if made with the Company's prior written consent. **Damages** do not include:
>
> A. restitution and disgorgement of profits, fees, costs and expenses paid or incurred or charged by an **Insured**, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise; nor economic injuries that are a consequence of any of the foregoing;
>
> B. civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to law, statute, regulation or court rule;
>
> C. the multiplied portion of multiplied awards imposed pursuant to any statute or regulation requiring such awards;
>
> D. injunctive or declaratory relief;

      E. any amount that is not insurable under any applicable statute or regulation;

      F. any amounts for which an **Insured** is liable due to an act or omission in knowing violation of any written contract or agreement; or

      G. plaintiff's attorney fees associated with any of the above.

Notwithstanding anything to the contrary above, and subject to this Policy's other terms, conditions and limitations, **damages** shall include punitive and exemplary **damages**. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such punitive or exemplary **damages**.

36. The Policies define **products-completed operations hazard claim** as "a **claim** alleging a **products-completed operations hazard** and arising out of an **occurrence**."

37. The Policies define **products-completed operations hazard** as:

    A. **bodily injury** or **property damage** arising out of **your product** or **your work**; or

    B. **personal or advertising injury** but solely to the extent such **personal or advertising injury** arises out of **clinical trials** sponsored by **you** and solely to the extent a **clinical trial** participant incurs such **personal or advertising injury**.

However, **products-completed operations hazard** does not include **bodily injury** or **property damage** arising out of:

    1. the transportation of property, unless the **bodily injury** or **property damage** arises out of a condition in or on a vehicle created by the **loading or unloading** of it; or

    2. the existence of tools, uninstalled equipment, or abandoned or unused materials.

38. The Policies define **occurrence** as "an accident, including continuous or repeated exposure to the same general harmful conditions."

39. The Policies **further** provide, in relevant part:

This Policy applies to such **claims** under I.A. above only if:

    1. such **claim** is both first made against an **Insured** during the **policy period** and reported in a timely manner to the Company in accordance with Section **V. CONDITIONS,** paragraph **A. Your Duties If There Is A Claim** . . . .

Complaint for Declaratory Judgment    - 11 -

40. Condition **D. When a Claim shall be Deemed Made** states that a claim is deemed made:

   1. in the case of a written demand, on the **executive officer**'s receipt of such demand; or

   2. in the case of a civil action proceeding in a court of law or equity or arbitration, or a regulatory proceeding, on the date of service upon, or other receipt by, **you** of a complaint against **you** in such proceeding or arbitration.

41. The Policies also contain the following exclusions:

   **C.   Banned Materials**

   based on or arising out of **your product** or **your work** that is manufactured, developed, designed, created, tested, sold, leased, licensed, rented, handled, marketed, distributed or disposed of by **you** or others on **your** behalf in known violation of any law, statute, ordinance or regulation. For purposes of determining the applicability of this exclusion:

   1. the facts pertaining to and knowledge possessed by any natural person **Insured** shall not be imputed to any other natural person **Insured**; and

   2. only facts pertaining to and knowledge possessed by any **Insured** as set forth in paragraph A. of the definition of **Insured** in **IV.**, **DEFINITIONS** shall be imputed to **you**.

   **D.   Breach of Contract**

   any **claim** or suit based on or arising directly or indirectly out of the following:

   1. breach of express or implied contract;

   2. breach of express or implied warranty;

   3. fraud or misrepresentation regarding the formation, terms or performance of a contract; or

   4. libel, slander or defamation arising out of or within the contractual relationship;

   nor do we have any duty to defend any **claim** or suit arising from 1. through 4. of the above.

   \*   \*   \*

Complaint for Declaratory Judgment            - 12 -

**F.    Criminal, Dishonest, Fraudulent, Malicious Conduct or Acts of Intentional Wrongdoing**

based on or arising out of criminal, dishonest, fraudulent or malicious conduct or acts of intentional wrongdoing by the **Insured**; provided, however, that the Company shall provide the **Insured** with a defense of such **claim** unless or until the dishonest, fraudulent, malicious or act of intentional wrongdoing has been determined by a trial verdict, court ruling, regulatory ruling or legal admission, but such a defense will only be provided in a civil action or regulatory proceeding for **claims** asserted by a **bodily injury** or **property damage** claimant in his or her individual capacity.  The defense of a **claim** will not waive the rights of the Company to deny indemnity under the applicable Policy.

For purposes of determining the applicability of this exclusion:

1. the facts pertaining to and knowledge possessed by any natural person **Insured** shall not be imputed to any other natural person **Insured**; and

2. only facts pertaining to and knowledge possessed by any **Insured** as set forth in paragraph A. of the definition of **Insured** in **IV., DEFINITIONS** shall be imputed to **you**.

\*   \*   \*

**H.    Expected or Intended Injury**

based on or arising out of any actual or alleged **bodily injury** or **property damage** expected or intended from the standpoint of the **Insured**.  This exclusion does not apply to:

1. **bodily injury** resulting from the use of reasonable force to protect persons or property; or

2. **bodily injury** that is intended or can be expected from reasonable use of **your product**.

\*   \*   \*

**M.    Medical Services**

based on or arising out of **medical services**.  However this exclusion does not apply to:

1. physicians, dentists, nurses, emergency medical technicians or paramedics employed by **you** to the extent that they are rendering first aid; or

2. to any **products-completed operations hazard claim** made against a **clinical trial investigator**.

Complaint for Declaratory Judgment        - 13 -

42. The Policies **define Medical services** as:

   A. dental, medical, mental health, nursing, surgical, imaging, clinical testing or other similar service providing direct care to a patient and performed by a medical intern, resident, technician, nurse, physician or other medical professional;

   B. the furnishing of food, beverages, medications or appliances in connection with such services; or

   C. the postmortem handling of human bodies.

43. The 2018 Policy **also** includes a manuscript endorsement titled Opioid And Narcotics Exclusion With Pharmaceutical Manufacturing Defect And Individual Bodily Injury Exceptions Endorsement.

44. The Opioid **Exclusion** broadly excludes from coverage "**[b]odily injury**, **property damage**, **personal and advertising injury**, loss arising out of, resulting from, . . . or in any way related to . . . [t]he actual or alleged use, abuse, misuse, illicit use, overuse, overdose, unlawful distribution, diversion, risks of, and/or addiction to any" opioids or narcotics.

## COUNT I – NO DUTY TO DEFEND
## (2017 Policy)

45. Navigators incorporates by reference the allegations in Paragraphs 1 through 44 above as if fully set forth herein.

46. Depomed has sought coverage for the Opioid Lawsuits under the 2017 Policy.

47. Navigators maintains that the Opioid Lawsuits are not covered by the 2017 Policy because they do not seek **damages** for a claim alleging **bodily injury** and arising out of an **occurrence**. Instead, the Opioid Lawsuits seek economic losses, restitution, disgorgement, multiplied damages, civil and criminal penalties, and equitable relief based upon Depomed's allegedly intentional wrongdoing.

48. Additionally, all but three of the Lawsuits were filed after the 2017 Policy Period expired.

49. Furthermore, recovery for some or all of the damages sought in the Opioid Lawsuits are precluded by the following exclusions:

a. Exclusion C, which provides that the 2017 Policy does not apply to claims based on or arising out of banned materials;

b. Exclusion D, which provides that the 2017 Policy does not apply to claims based on or arising out of breach of warranties;

c. Exclusion F, which provides that the 2017 Policy does not apply to claims "based on or arising out of criminal, dishonest, fraudulent or malicious conduct or acts of intentional wrongdoing";

d. Exclusion H, which provides that the 2017 Policy does not apply to claims expected or intended by the insured; or

e. Exclusion M, which provides that the 2017 Policy does not apply to claims based on or arising out of "medical services" as defined within the 2017 Policy.

50. An actual controversy exists between Navigators and Depomed regarding whether the 2017 Policy obligates Navigators to defend Depomed with respect to the Opioid Lawsuits.

51. Pursuant to 28 U.S.C. § 2201, Navigators is entitled to a judgment declaring that it has no obligation to defend Depomed in the 2017 Lawsuits.

## COUNT II – NO DUTY TO INDEMNIFY
## (2017 Policy)

52. **Navigators** incorporates by reference the allegations in Paragraphs 1 through 51 above as if fully set forth herein.

53. An **actual** controversy exists between Navigators and Depomed regarding whether the 2017 Policy obligates Navigators to indemnify Depomed for judgment in, or settlement of, the Opioid Lawsuits.

54. Pursuant to 28 U.S.C. § 2201, Navigators is entitled to a judgment declaring that it has no obligation to indemnify Navigators for any judgment in, or settlement of, the Opioid Lawsuits under the 2017 Policy.

## COUNT III – NO DUTY TO DEFEND
## (2018 Policy)

55. Navigators incorporates by reference the allegations in Paragraphs 1 through 44 above as if fully set forth herein.

56. Navigators maintains that the Opioid Lawsuits are not covered by the 2018 Policy because they do not seek **damages** for a claim alleging **bodily injury** and arising out of an **occurrence**. Instead, the Opioid Lawsuits seek economic losses, restitution, disgorgement, multiplied damages, civil and criminal penalties, and equitable relief based upon Depomed's allegedly intentional wrongdoing.

57. Navigators further maintains that it has no duty to defend Depomed under the 2018 Policy because the Opioid Exclusion precludes coverage for the Opioid Lawsuits, which are all grounded in claims related to or arising out of the distribution of opioids.

58. Additionally, recovery for some or all of the damages sought in the Opioid Lawsuits is precluded by the following exclusions:

   a. Exclusion C, which provides that the 2018 Policy does not apply to claims based on or arising out of banned materials;

   b. Exclusion D, which provides that the 2018 Policy does not apply to claims based on or arising out of breach of warranties;

   c. Exclusion F, which provides that the 2018 Policy does not apply to claims "based on or arising out of criminal, dishonest, fraudulent or malicious conduct or acts of intentional wrongdoing";

   d. Exclusion H, which provides that the 2018 Policy does not apply to claims expected or intended by the insured; or

   e. Exclusion M, which provides that the 2018 Policy does not apply to claims based on or arising out of "medical services" as defined within the 2018 Policy.

59. An actual controversy exists between Navigators and Depomed regarding whether the 2018 Policy obligates Navigators to defend Depomed with respect to the Opioid Lawsuits.

60. Pursuant to 28 U.S.C. § 2201, Navigators is entitled to a judgment declaring that it has no obligation to defend the Opioid Lawsuits under the 2018 Policy.

## COUNT IV – NO DUTY TO INDEMNIFY
### (2018 Policy)

61. Navigators incorporates by reference the allegations in Paragraphs 1 through 44 and 55 through 60 above as if fully set forth herein.

62. An actual controversy exists between Navigators and Depomed regarding whether the 2018 Policy obligates Navigators to indemnify Depomed for judgment in, or settlement of, the Opioid Lawsuits.

63. Pursuant to 28 U.S.C. § 2201, Navigators is entitled to a judgment declaring that it has no obligation under the 2018 Policy to indemnify Navigators for any judgment in, or settlement of, the Opioid Lawsuits.

## COUNT V – ALLOCATION (IN THE ALTERNATIVE)

64. Navigators incorporates by reference the allegations in Paragraphs 1 through 63 above as if fully set forth herein.

65. To the extent that any Counts of the Opioid Lawsuits are covered by either of the Policies, Navigators is entitled to allocation between covered and uncovered defense and indemnification costs.

## PRAYER FOR RELIEF

WHEREFORE, Navigators prays that this Honorable Court find and declare the rights and duties of the parties, and specifically find and declare:

A. That Navigators owes no duty to defend or indemnify Depomed with respect to the Opioid Lawsuits under the 2017 Policy.

B. That Navigators owes no duty to defend or indemnify Depomed with respect to the Opioid Lawsuits under the 2018 Policy.

C. In the alternative, that Navigators is entitled to allocation between covered and uncovered costs with respect to the Opioid Lawsuits.

D. For all such other or further relief as the Court deems just and proper.

Dated:  January 14, 2019

Joseph A. Hinkhouse
Colleen P. Sorensen
Michelle L. Goyke
HINKHOUSE WILLIAMS WALSH LLP

Kevin F. Kieffer
Ross Smith
TROUTMAN SANDERS LLP


By:/s/ Kevin Kieffer
    Kevin F. Kieffer

Attorneys for Plaintiff
Navigators Specialty Insurance Company

37591907