Kevin F. Kieffer, Bar No. 192193
kevin.kieffer@troutman.com
Ross Smith, Bar No. 204018
ross.smith@troutman.com
TROUTMAN SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614-2545
Telephone:   949.622.2700
Facsimile:   949.622.2739


Joseph A. Hinkhouse (IL 6199305)
Colleen P. Sorensen (IL 6287454)
Michelle L. Goyke (IL 6316938)
(pro hac vice admissions pending)
HINKHOUSE WILLIAMS WALSH LLP
180 N. Stetson Avenue, Suite 3400
Chicago, IL 60601
jhinkhouse@hww-law.com
csorensen@hww-law.com
mgoyke@hww-law.com
Telephone: 312.784.5400
Facsimile: 312.784.5499


Attorneys for Plaintiff
Navigators Specialty Insurance Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAVIGATORS SPECIALTY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> DEPOMED, INC. n/k/a ASSERTIO THERAPEUTICS, INC., <br><br> Defendant. | Case No.  4:19-cv-00255-HSG <br><br> **FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT** |

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Navigators Specialty Insurance Company ("Navigators"), by and through its counsel, hereby files this First Amended Complaint for a declaratory judgment against Depomed, Inc., now known as Assertio Therapeutics, Inc. ("Depomed"), and states as follows:

## NATURE OF THE ACTION

1. This action involves a dispute regarding insurance coverage for 182 lawsuits brought against Depomed since March 2018 and alleging that Depomed and other manufacturers engaged in a scheme to increase prescription opioid sales and associated profits by knowingly making false and unsupported representations regarding the effectiveness of opioids for long-term pain relief and concealing information about the risks of addiction (collectively, the "Opioid Lawsuits"). A list of the Opioid Lawsuits is attached as Exhibit A.

2. Navigators issued three claims-made Products-Completed Operations Liability Policies to Depomed for annual periods from April 2, 2017 to April 2, 2018 (the "2017 Product Liability Policy"), April 2, 2018 to May 2, 2019 (the "2018 Product Liability Policy") and May 2, 2019 to May 2, 2020 (the "2019 Product Liability Policy"; collectively, the "Product Liability Policies").

3. Depomed has tendered the Opioid Lawsuits to Navigators for defense and indemnity under one or more of the Product Liability Policies.

4. Navigators disputes that it has any obligation to defend or indemnify the Opioid Lawsuits under the Product Liability Policies both because the Opioid Lawsuits are not covered under the plain terms of the Product Liability Policies and because Depomed made material representations and omissions with respect to its opioid products and liability resulting from same in connection with the underwriting of the 2017 and 2018 Product Liability Policies.

5. As an initial matter, the plain language of the Product Liability Policies Insuring Agreements and Exclusions preclude coverage for the Opioid Lawsuits.

6. The Product Liability Policies' Insuring Agreement provides coverage only for **damages** that an **Insured** becomes legally liable to pay for **products-completed operations hazard claims**, and Navigators' duty to defend extends only to covered **claims**.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

7.     The Product Liability Policies define **products-completed operations hazard claims** as **claims** alleging **bodily injury** or **property damage** and arising out of an **occurrence**.

8.     They further define **occurrence** as an "accident."

9.     The Opioid Lawsuits do not allege claims that arise out of an accident.  Instead, they allege claims arising out of Depomed's intentional marketing and distribution practices and seek compensation for the foreseeable injuries to plaintiffs caused by this intentional conduct.

10.     One hundred and three of the 182 Opioid Lawsuits also fail to allege the requisite **bodily injury**.  These lawsuits were brought by government entities or third-party payors.  The plaintiffs in these lawsuits seek to recover for their economic losses (the "Economic Loss Lawsuits").  They do not seek recovery for **bodily injury** caused by Depomed's products.

11.     The Opioid Lawsuits are also precluded from coverage by one or more exclusions in the Product Liability Policies.

12.     Most importantly, all but eight of the Opioid Lawsuits are excluded from coverage by the Opioid Exclusions in the 2018 and 2019 Liability Policies.

13.     Each of the Product Liability Policies only applies to **claims** first made during the **policy period**.

14.     A **claim** is deemed made during the **policy period** only if it arises out of a **circumstance** that Depomed reported to Navigators in writing during the **policy period** or it is first received by Depomed during the **policy period**.

15.     Despite receiving multiple requests for information and subpoenas from the federal and several state governments regarding its opioid sales and promotion practices, Depomed did not provide Navigators with written notice of any circumstance during the 2017 policy period.

16.     On information and belief, Depomed failed to notify Navigators of any circumstance arising out of or relating to the requests and subpoenas because it correctly understood that the Opioid Lawsuits (many of which were already pending against other manufacturers) were not **products-completed operations hazard claims**.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

17.     Regardless of the reason, Depomed's failure to notify Navigators of a circumstance during the 2017 policy period means that only the three Opioid Lawsuits first received by Depomed during the same period are considered "first made" during the policy period of the 2017 Product Liability Policy.

18.     The remaining 179 Opioid Lawsuits were first received by Depomed in the 2018 or 2019 policy periods.

19.     The 2018 and 2019 Product Liability Policies exclude "**[b]odily injury**, **property damage**, **personal and advertising injury**, loss arising out of, resulting from, . . . or in any way related to . . . [t]he actual or alleged use, abuse, misuse, illicit use, overuse, overdose, unlawful distribution, diversion, risks of, and/or addiction to any" opioids or narcotics (the "Opioid Exclusion").

20.     The 2018 Product Liability Policy's Opioid Exclusion is subject to a narrow exception for claims brought by individuals that ingested Depomed's product.  Of the 43 Opioid Lawsuits first made in the 2018 policy period, only five fall within this exception.

21.     The exclusion in the 2019 Product Liability Policy is absolute, and it excludes all 136 Opioid Lawsuits first made during the 2019 policy period from coverage.

22.     All three of the Product Liability Policies also contain additional applicable exclusions including for Banned Materials, Breach of Contract, Expected-Intended, Criminal or Fraudulent Conduct or Intentional Wrongdoing and Medical Services.

23.     Depomed disputes Navigators' position with respect to coverage under all three Product Liability Policies and maintains that Navigators has a duty to defend each and every Opioid Lawsuits.

24.     Even if the Opioid Lawsuits were covered under one or more of the Product Liability Policies (which they are not), Depomed is estopped from seeking coverage for the Opioid Lawsuits under the 2017 and 2018 Product Liability Policies.

25.     Navigators agreed to provide insurance for certain types of opioid claims (not including the Opioid Lawsuits) under the 2017 and 2018 Policies based on Depomed's

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

representations that its opioid products were less addictive and prone to abuse than other products on the market.

26.     It further issued the 2018 Product Liability Policy with a limited Opioid Exclusion based in part on Depomed's failure to report the 2017 Opioid Lawsuits or assert that such lawsuits were covered under the terms of the 2017 Product Liability Policy until after the 2018 Product Liability was issued.

27.     Navigators therefore seeks a declaration that it has no duty to defend or indemnify Depomed in the Opioid Lawsuits under the 2017 or 2018 Policies.

28.     In the alternative, Navigators seeks a declaration that Depomed is estopped from seeking coverage for the Opioid Lawsuits under the 2018 and 2019 Product Liability Policies based on its material representations and omissions to Navigators.

## PARTIES

29.     Navigators is a corporation organized under the laws of the state of New York, with its principal place of business in New York, New York.

30.     At all times relevant to the negotiation and purchase of the 2017 Product Liability Policy and the 2018 Policy, Depomed was a corporation organized under the laws of the state of California, with its principal place of business in Newark, California.

31.     In August 2018, Depomed merged with and into Assertio.   Assertio is a corporation organized under the laws of the state of Delaware with its principal place of business in Lake Forest, Illinois.

## JURISDICTION AND VENUE

32.     **Jurisdiction**.  This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.  The matter in controversy arises between citizens of different states, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

33.     Declaratory relief is authorized pursuant to 28 U.S.C. § 2201.

34.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because at all times relevant to this action the defendant resided in this District.

FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

35.     **Intradistrict Assignment**. Assignment to the San Francisco Division or Oakland Division of the Court is proper pursuant to Civil L.R. 3-2(c) because each division serves Alameda County and San Francisco County, the counties in which this action arises.  The 2017 and 2018 Policies were issued to defendant Depomed in Alameda County or San Francisco County, and, therefore, this is where a substantial part of the underlying events giving rise to this lawsuit occurred or in which a substantial part of the property that is the subject of the action is situated.

## FACTUAL ALLEGATIONS

**A.     Senate Request for Information on Depomed's Opioid Marketing Practices**

36.     Depomed is a pharmaceutical company that manufactured, marketed and sold prescription opioid products Lazanda, Nucynta and Nucynta ER.

37.     On or around March 28, 2017, Depomed received a request for information regarding its sales, marketing and educational strategies for opioid promotion from the Office of Senator Claire McCaskill, Ranking Member of the Committee of Homeland Security and Governmental Affairs.

38.     The request stated that the country was experiencing an epidemic of opioid overuse and abuse.

39.     It further stated that "[t]his epidemic is the direct result of a calculated sales and marketing strategy major opioid manufacturers have allegedly pursued over the past 20 years to expand their market share and increase dependency on powerful and often deadly painkillers" and that "[t]o achieve this goal, manufactures have reportedly sought to downplay the risk of addiction to their products and encourage[d] physicians to prescribe opioids for all cases of pain and in high doses."

40.     The request identified specific methods of the alleged marketing scheme, including direct physician education through continuing education seminars and donations to third-party advocacy groups.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**B.**     **The 2017 Product Liability Policy**

41.     At the time Depomed received the Senate Request, it was in the process of procuring a product liability policy from Navigators.

42.     The application signed and submitted by Depomed in connection with this process warranted that Depomed would update Navigators regarding the information supplied in the application, which included whether Depomed was aware of any incidents or events likely to result in a claim.

43.     Despite this warranty, Depomed did not advise Navigators of the Senate Request prior to issuance of the product liability policy.

44.     Effective April 2, 2017, Navigators issued to Depomed GLS Elite Products-Completed Operations Liability Coverage policy number OC17LGL0A3B7LNC from Navigators (the "2017 Product Liability Policy").

45.     Subject to its terms, conditions and exclusions, the 2017 Product Liability Policy obligates Navigators to defend and indemnify Depomed against product liability claims first made during the policy period: April 2, 2017 to April 2, 2018. A true and correct copy of the 2017 Product Liability Policy is attached hereto as Exhibit B.

46.     The 2017 Product Liability Policy's Insuring Agreement provides that Navigators will pay "amounts in excess of the deductible or retention up to the limit of liability for **damages** that an **Insured** becomes legally liable to pay as a result of a **products-completed operations hazard claim**."

47.     The 2017 Product Liability Policy contains a defense provision providing in part that Navigators "has the right and duty to defend any covered **claim**, against an **Insured**, seeking **damages** that are payable under the terms of this Policy, even if any of the allegations of such **claim** are groundless, false or fraudulent. The Company will designate or, at its option, approve counsel to defend the **claim**. . . ."

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

48.    The 2017 Product Liability Policy defines **products-completed operations hazard claim** as "a **claim** alleging a **products-completed operations hazard** and arising out of an **occurrence**."

49.    The 2017 Product Liability Policy defines **products-completed operations hazard** to include "**bodily injury** or **property damage** arising out of **your product** or **your work**."

50.    The 2017 Product Liability Policy defines **occurrence** as "an accident, including continuous or repeated exposure to the same general harmful conditions."

51.    The Insuring Agreement further provides that "This Policy applies to such **claims** under I.A. above only if: . . . such **claim** is . . . first made against an **Insured** during the **policy period** . . . ."

52.    Condition **D. When a Claim shall be Deemed Made** states that a **claim** is deemed made, "in the case of a civil action proceeding in a court of law or equity or arbitration, or a regulatory proceeding, on the date of service upon, or other receipt by, **you** of a complaint against **you** in such proceeding or arbitration."

53.    Condition **B. Your Rights in the Event of a Circumstance** provides:

If, during the **policy period**, **you** report a **circumstance** for which there may be coverage under this Policy, and **you** give the Company written notice containing:
1. what happened, and the details of **your work**, **your product** or activities **you** performed that might give rise to a **claim**;
2. the nature of any possible injury or **damages**;
3. how **you** first became aware of such **circumstance**;
4. the identity of the specific **Insureds** allegedly responsible for such specific activities; and
5. the nature of the potential demand for money or services that may be sought in consequence of such specific activities,

then any **claim** otherwise covered that may subsequently be made against an **Insured** during the **Coverage Relationship**, during the automatic Extended Reporting Period, or any Supplemental Extended Reporting Period if purchased, arising out of such **circumstance** shall be deemed to have been made against such **Insured** on the date the Company received written notice of the **circumstance**.

54.    Condition **R. Extended Reporting Periods** provides in relevant part:

FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

Extended Reporting Periods do not extend the **policy period** or change the scope of coverage provided, nor do they act to reinstate or increase any of the limits of liability.  They apply only to **claims** that occur before the end of the **policy period** but not before the retroactive date shown in the Declarations.  Extended Reporting Periods begin at the end of the **coverage relationship** and apply to **claims** first made and reported to us during the Extended Reporting Periods.  A **claim** first made and reported to us during the Extended Reporting Periods will be deemed to have been made on the last day of the **policy period**.

1. Automatic Extended Reporting Period
   The Company will provide an automatic, non-cancelable Extended Reporting Period of 90 days at no additional premium if no other insurance is purchased by you to replace this Policy. . . .

2. Supplemental Extended Reporting Period (Optional)
   An optional Supplemental Extended Reporting Period of up to a maximum of 84 months can be purchased to replace the Automatic Extended Reporting Period. . . .

55.   The Policy also contain the following exclusions:

**C.      Banned Materials**

based on or arising out of **your product** or **your work** that is manufactured, developed, designed, created, tested, sold, leased, licensed, rented, handled, marketed, distributed or disposed of by **you** or others on **your** behalf in known violation of any law, statute, ordinance or regulation. For purposes of determining the applicability of this exclusion:

1. the facts pertaining to and knowledge possessed by any natural person **Insured** shall not be imputed to any other natural person **Insured**; and

2. only facts pertaining to and knowledge possessed by any **Insured** as set forth in paragraph A. of the definition of **Insured** in **IV.**, **DEFINITIONS** shall be imputed to **you**.

**D.      Breach of Contract**

any **claim** or suit based on or arising directly or indirectly out of the following:

1. breach of express or implied contract;

2. breach of express or implied warranty;

3. fraud or misrepresentation regarding the formation, terms or performance of a contract; or

FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

4.  libel, slander or defamation arising out of or within the contractual relationship;

nor do we have any duty to defend any **claim** or suit arising from 1. through 4. of the above.

       \*      \*      \*

**F.**     **Criminal, Dishonest, Fraudulent, Malicious Conduct or Acts of Intentional Wrongdoing**

based on or arising out of criminal, dishonest, fraudulent or malicious conduct or acts of intentional wrongdoing by the **Insured**; provided, however, that the Company shall provide the **Insured** with a defense of such **claim** unless or until the dishonest, fraudulent, malicious or act of intentional wrongdoing has been determined by a trial verdict, court ruling, regulatory ruling or legal admission, but such a defense will only be provided in a civil action or regulatory proceeding for **claims** asserted by a **bodily injury** or **property damage** claimant in his or her individual capacity.  The defense of a **claim** will not waive the rights of the Company to deny indemnity under the applicable Policy.

For purposes of determining the applicability of this exclusion:

1.  the facts pertaining to and knowledge possessed by any natural person **Insured** shall not be imputed to any other natural person **Insured**; and

2.  only facts pertaining to and knowledge possessed by any **Insured** as set forth in paragraph A. of the definition of **Insured** in **IV.**, **DEFINITIONS** shall be imputed to **you**.

       \*      \*      \*

**H.**     **Expected or Intended Injury**

based on or arising out of any actual or alleged **bodily injury** or **property damage** expected or intended from the standpoint of the **Insured**.  This exclusion does not apply to:

1.  **bodily injury** resulting from the use of reasonable force to protect persons or property; or

2.  **bodily injury** that is intended or can be expected to result from reasonable use of **your product**.

       \*      \*      \*

**M.**     **Medical Services**

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

based on or arising out of **medical services**.  However this exclusion does not apply to:

1.  physicians, dentists, nurses, emergency medical technicians or paramedics employed by **you** to the extent that they are rendering first aid; or

2.  to any **products-completed operations hazard claim** made against a **clinical trial investigator**.

56.   The Policies define **Medical services** as:

A.   dental, medical, mental health, nursing, surgical, imaging, clinical testing or other similar service providing direct care to a patient and performed by a medical intern, resident, technician, nurse, physician or other medical professional;

B.   the furnishing of food, beverages, medications or appliances in connection with such services; or

C.   the postmortem handling of human bodies.

## C.    The Maryland and DOJ Subpoenas for Information on Depomed's Opioid Marketing Practices

57.   On or around May 25, 2017, Depomed was served with an administrative subpoena by the State of Maryland.

58.   The State of Maryland subpoena sought information and documents regarding sales and marketing of Depomed's opioid products in Maryland, including information on prescribers, consumers and potential consumers and sales representatives, and information and documents regarding promotional and marketing activities and expenses.

59.   On or around July 27, 2017, Depomed was served with a subpoena by the United States Department of Justice (the "DOJ").

60.   The DOJ subpoena sought sales and marketing information related to Depomed's opioid products, including documents related to marketing goals and research, target audience development, sales and promotional materials, and prescriptions written.

## D.    Depomed Fails to Notify Navigators of Any Circumstance

61.   As of July 2017, Woodruff-Sawyer & Company, Inc. ("Woodruff-Sawyer") was Depomed's insurance broker.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

62.     Woodruff-Sawyer's responsibilities included notifying Depomed's insurance carriers of claims and/or circumstances likely to lead to covered claims.

63.     On August 8, 2017, Woodruff-Sawyer provided the Senate request for information, Maryland subpoena and DOJ subpoena to Depomed's Directors & Officers insurers ("D&O Carriers").

64.     The cover email attaching the request and subpoenas notified Depomed's D&O carriers that the alleged marketing practices constituted a "circumstance" likely to give rise to a claim under the D&O policies.

65.     Neither Depomed nor Woodruff-Sawyer provided copies of the subpoenas to Navigators.

66.     Nor did they notify Navigators of any alleged "circumstance" likely to give rise to any claim under the 2017 Product Liability Policy.

**E.      The *City of Rome, Family Practice Clinic and Arkansas* Lawsuits**

67.     On March 2, 2018, Depomed was sued by a group of Georgia municipalities in a case captioned *City of Rome v. Purdue Pharma LP,* No. 4:18-cv-00052-MHC, in the United States District Court for the Northern District of Georgia (the "*City of Rome* Lawsuit").

68.     The complaint avers that the plaintiffs brought the lawsuit "to eliminate the hazard to public health and safety caused by the opioid epidemic, to abate the nuisance caused thereby, and to recoup monies that have been spent, or will be spent, because of Defendants' false, deceptive, and unfair marketing and/or unlawful diversion of prescription opioids."

69.     The complaint alleges that "[t]he opioid epidemic did not happen by accident" and that plaintiffs' "economic damages were foreseeable to Defendants and were sustained because of Defendants intentional and/or unlawful actions and omissions."

70.     It further alleges that the opioid epidemic was caused by Depomed and other manufacturers' efforts to increase sales through a marketing campaign of false assurances regarding the safety and efficacy of prescription opioids for the treatment of chronic pain.

71.     The complaint states in relevant part:

Before the 1990s, generally accepted standards of medical practice

FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

dictated that opioids should only be used short-term for acute pain, pain relating to recovery from surgery, or for cancer or palliative (end-of-life) care. Because of the lack of evidence that opioids improved patients' ability to overcome pain and function, coupled with evidence of greater pain complaints as patients developed tolerance to opioids over time and the serious risk of addiction and other side effects, the use of opioids for chronic pain was discouraged or prohibited. As a result, doctors generally did not prescribe opioids for chronic pain.

Each Manufacturer Defendant has conducted, and has continued to conduct, a marketing scheme designed to persuade doctors and patients that opioids can and should be used for chronic pain, resulting in opioid treatment for a far broader group of patients who are much more likely to become addicted and suffer other adverse effects from the long-term use of opioids. In connection with this scheme, each Manufacturer Defendant spent, and continues to spend, millions of dollars on promotional activities and materials that falsely deny or trivialize the risks of opioids while overstating the benefits of using them for chronic pain.

The Manufacturer Defendants have made false and misleading claims, contrary to the language on their drugs' labels, regarding the risks of using their drugs that: (1) downplayed the serious risk of addiction; (2) created and promoted the concept of "pseudoaddiction" when signs of actual addiction began appearing and advocated that the signs of addiction should be treated with more opioids; (3) exaggerated the effectiveness of screening tools to prevent addiction; (4) claimed that opioid dependence and withdrawal are easily managed; (5) denied the risks of higher opioid dosages; and (6) exaggerated the effectiveness of "abuse-deterrent" opioid formulations to prevent abuse and addiction. The Manufacturer Defendants have also falsely touted the benefits of long-term opioid use, including the supposed ability of opioids to improve function and quality of life, even though there was no scientifically reliable evidence to support the Manufacturer Defendants' claims.

The Manufacturer Defendants have disseminated these common messages to reverse the popular and medical understanding of opioids and risks of opioid use. They disseminated these messages directly, through their sales representatives, in speaker groups led by physicians the Manufacturer Defendants recruited for their support of their marketing messages, and through unbranded marketing and industry-funded front groups.

72.     As damages, the complaint seeks injunctive relief, restitution, disgorgement of profits, forfeiture, compensatory and punitive damages, treble damages, economic losses attorneys' fees and costs, and pre- and post-judgment interest.

73.     On March 6, 2018, Woodruff-Sawyer tendered the *City of Rome* lawsuit to Depomed's D&O Carriers.

74.     On March 21, 2018, Depomed was sued by the Family Practice Clinic of Booneville and the Family Health Care Clinic, PSC in a case captioned *Family Practice Clinic of Booneville v. Purdue Pharma, LP*, No. 6:18-cv-00087-GFVT, in the United States District Court for the Eastern District of Kentucky (the "*Family Practice Clinic* Lawsuit").

75.     The complaint's allegations are near verbatim the allegations contained in the *City of Rome* complaint.

76.     Like the *City of Rome* complaint, the *Family Practice Clinic* complaint contains the language quoted in paragraphs 69 to 71 above.

77.     On March 19, 2018, Depomed was sued by the State of Arkansas in a case captioned *Arkansas v. Purdue Pharma LP*, No. CV-2018-268, in the Circuit Court of Crittenden County, Arkansas (the "*Arkansas* Lawsuit"; together with the *City of Rome* and *Family Practice Clinic Lawsuits*, the "2017 Opioid Lawsuits").

78.     The factual allegations in the *Arkansas* Lawsuit are materially identical to those in the *City of Rome* and *Family Practice Clinic* Lawsuits.

79.     On March 26, 2018, Woodruff-Sawyer tendered the *Family Practice Clinic* Lawsuit to Depomed's D&O Carriers.

80.     On March 28, 2018, Woodruff-Sawyer tendered the *Arkansas* Lawsuit to Depomed's D&O Carriers.

**F.     The 2018 Product Liability Policy**

81.     Shortly after the 2017 Opioid Lawsuits were filed, Depomed purchased a renewal of the 2017 Product Liability Policy: GLS Elite Products-Completed Operations Liability Coverage policy number OC18LGL0A3B7LNC from Navigators effective April 2, 2018 to May

FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

2, 2019 (the "2018 Product Liability Policy").   A true and correct copy of the 2018 Product Liability Policy is attached hereto as Exhibit C.

82.     Renewal discussions for the 2018 Product Liability Policy had begun months earlier, in December 2017.

83.     At that time, Navigators had advised Depomed's broker, Woodruff-Sawyer, that it had implemented a new policy that required the addition of an opioid exclusion on all product liability policies issued to companies that manufactured, marketed or distributed opioid products.

84.     Navigators offered Depomed's broker the option of a standard opioid exclusion providing an exception only for manufacturing defects, and a modified version providing exceptions for both manufacturing defects and individual bodily injury.

85.     The purpose of the exclusion was to reaffirm the scope of existing coverage:  the product liability policies did not cover suits by municipalities and third-party payors against opioid manufacturers and distributors for economic losses arising out of the opioid epidemic.

86.     Navigators determined that the exclusion was necessary in light of a Seventh Circuit decision holding that a lawsuit brought by the State of West Virginia against an opioid distributor was covered under a general liability policy that covered bodily injury claims. *Cincinnati Ins. Co. v. H.D. Smith, LLC*, 829 F.3d 771 (7th Cir. 2016).

87.     Navigators had also become concerned that the plaintiffs' bar might start bringing mass tort suits on behalf of individual opioid users (much as it had with asbestos).  It therefore drafted an absolute exclusion for accounts of certain companies in the opioid business.

88.     On March 1, 2018, Woodruff-Sawyer sent Depomed's completed application for a renewal policy to Navigators.

89.     Depomed's application referenced state subpoenas that had been filed against it but did not provide copies.

90.     Depomed's application represented that it was not "aware of any known occurrence(s) not yet reported."

FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

91.     Depomed's application further represented that it was not "aware of any incidents or events involving or arising out of your products or operations which are likely to result in a claim."

92.     Depomed's application was signed by Depomed's former Vice President of Finance, Jack Anders, who warranted with his signature:

> … that if the information supplied on this application changes between the date of this application and the effective date of the insurance, the applicant will, in order for the information to be accurate on the effective date of the insurance, immediately notify the insurer of such changes, and the insurer may withdraw or modify any outstanding quotation or authorization or agreement to bind the insurance.

93.     Navigators determined that renewal subject to an exclusion for opioid lawsuits brought by municipalities and third-party payors was appropriate; it did not require an absolute exclusion.

94.     Navigators' decision was based on Depomed's representation that its opioid product, Nucynta, was less addictive than other opioids on the market and therefore less subject to abuse.

95.     On March 8, 2018, Navigators provided Depomed with a renewal quotation.

96.     The quotation included offered coverage on the same form as the prior year's policy and included the terms set forth at paragraphs 46 to 56.

97.     The quotation also included an option of two different versions of the opioid exclusion, at different premiums, both of which contained an exception for claims brought by individuals that had ingested Depomed's opioid product and suffered bodily injury from it.

98.     The quotation was based on information previously provided to Navigators as well as information contained in the completed application.

99.     Through its broker, Depomed requested changes to the opioid exclusion language, and the parties negotiated to reach a new final opioid exclusion.

100.    On April 2, 2018, Navigators bound coverage based on the information contained in the completed application.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

101.    At the time it bound coverage, Navigators was not aware that the 2017 Opioid Lawsuits had been filed against Depomed.

**G.      Depomed's Initial Tender under the 2017 Product Liability Policy**

102.    On April 27, 2018, Depomed's defense counsel, Baker Botts, notified Navigators of the 2017 Opioid Lawsuits and requested that Navigators agree to reimburse Depomed for defense costs and pay any indemnity under the 2017 Product Liability Policy.

103.    On September 26, 2018, the California Court of Appeals decision in *The Travelers Property Casualty Co. of America v. Actavis, Inc.*, 16 Cal. App. 5th 1026 (2017), became final.

104.    It held that allegations of a deceptive marketing campaign intended to increase sales of opioids and concomitant profits necessarily describe intentional acts that cannot be considered accidental for insurance liability purposes.

105.    Therefore, on January 14, 2019, Navigators disclaimed any duty to defend or indemnify Depomed in the 2017 Opioid Lawsuits.

106.    The letters explained that the 2017 Product Liability Policy did not cover the alleged claims because they were not claims for "bodily injury" caused by an "occurrence." Specifically, the plaintiffs sought compensation for economic losses, which were foreseeably caused by the Depomed's intentional marketing practices.

107.    The letters further advised that much of the relief sought did not qualify as "damages" as that term was defined by the 2017 Product Liability Policy and that the Banned Materials, Expected-Intended, Medical Services and Criminal or Fraudulent Conduct or Intentional Wrongdoing Exclusions in the Policies precluded coverage for some or all of the claims set forth in the Lawsuits.

**H.      Depomed's Supplemental Tenders and Request for an Extended Reporting Period under the 2017 Product Liability Policy**

108.    Between April 2, 2018 and May 2, 2019—while the 2018 Product Liability Policy was in effect—Depomed was sued in 43 additional opioid lawsuits (the "2018 Lawsuits").

109.    Depomed received copies of the complaints in each the 2018 Lawsuits on or before May 2, 2019.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

110. Of the 43 2018 Lawsuits, 38 were brought by a government entity or third-party payor and sought compensation for economic losses allegedly caused by the opioid epidemic (the "Economic Loss Lawsuits").

111. Each of these Lawsuits was thus excluded from coverage under the 2018 Product Liability Policy by its Opioid Exclusion.

112. Depomed therefore requested that Navigators issue an extended reporting period under the 2017 Product Liability Policy, so that it could report the 2018 Economic Loss Lawsuits under the 2017 Product Liability Policy.

113. In letters dated July 5, 2018 and August 14, 2018, Navigators advised Depomed that no extended reporting period was available under the 2017 Product Liability Policy because Depomed had purchased a renewal policy to replace it.

114. In a letter dated January 14, 2019, Navigators disclaimed any duty to defend or indemnify Depomed in the 2018 Economic Loss Lawsuits under the 2017 Product Liability on the ground that they were not first made in the 2017 policy period.

115. In the same letter, Navigators disclaimed any duty to defend or indemnify Depomed in the 2018 Economic Loss Lawsuits under the 2018 Product Liability Policy on the ground that they were excluded from coverage by the Opioid Exclusion.

116. Navigators further advised that, like the 2017 Opioid Lawsuits, there was no coverage for the 2018 Economic Loss Lawsuits under the 2017 or 2018 Policies because they did not allege claims for bodily injury caused by an occurrence.

117. The letter further advised that much of the relief sought did not qualify as "damages" as that term was defined by the 2017 and 2018 Product Liability Policies and that the Banned Materials, Expected-Intended, Medical Services and Breach of Contract Exclusions in the Policies precluded coverage for some or all of the claims set forth in the Lawsuits.

118. The remaining five 2018 Lawsuits were brought by individuals or their representatives seeking damages for bodily injury caused by Depomed's opioid products (the "2018 Bodily Injury Lawsuits"):

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

a. *Brodsky v. Purdue Pharma L.P., et al.*, Case No. 1:18-op-45751, U.S. District Court of Northern District of Ohio, transferred from U.S. District Court for the Eastern District of New York, Case No. CV18-2788;

b. *Robertson v. Mallinckrodt PLC, et al.*, Case No. 1822-CC11422, Missouri Circuit *Court*, Twenty-Second Judicial District;

c. *Poleski v. Mallinckrodt PLC, et al.*, Case No. 1822-CC11898, Missouri Circuit Court, Twenty-Second Judicial District;

d. *Parrot v. Mallinckrodt PLC, et al.*, Case No. 1922-CC00031, Missouri Circuit Ct., 22nd Judicial Circuit, St. Louis City; and

e. *Kuepfer v. Mallinckrodt PLC, et al.*, Case No. 1922-CC00291, Missouri Circuit Court, 22nd Judicial Circuit, St. Louis City.

119.   In a letter dated January 14, 2019, Navigators disclaimed any duty to defend or indemnify Depomed in the *Brodsky* Lawsuit because, like the Economic Loss Lawsuits, it alleged foreseeable injury flowing from Depomed's intentional marketing practices.

120.   The remaining four 2018 Bodily Injury Lawsuits had fewer specific allegations regarding Depomed's conduct.

121.   Navigators therefore offered to defend the remaining four 2018 Bodily Injury Lawsuits subject to a full reservation of rights, including the right to withdraw from Depomed's defense in the event it obtains a declaration of no coverage.

**I.   The 2019 Product Liability Policy**

122.   Effective May 2, 2019, Depomed purchased a renewal of the 2018 Product Liability Policy: GLS Elite Products-Completed Operations Liability Coverage policy number PH19LGL0A3B7LNV from Navigators (the "2019 Product Liability Policy").  A true and correct copy of the 2019 Product Liability Policy is attached hereto as Exhibit D.

123.   The 2019 Product Liability Policy follows the same form as the 2017 and 2018 Product Liability Policies and contained the terms identified in paragraphs 46 to 56.

124.   However, the 2019 Product Liability Policy has an absolute opioid exclusion that provides that the Policy does not apply to:

any **claim** or **circumstance** seeking or alleging relief, remedy or recovery of any kind or description or **damages** based upon, arising out of, relating to, directly or indirectly resulting from, in consequence of, attributable to, or in any way involving, whether via any delivery method, whether by direct or passive exposure, or whether intentional or unintentional, the following:

1. The actual or alleged use of, abuse of, misuse of, overdose or, distribution of, diversion of, risks of, absorption of, and/or addiction to:
   a. Any opioid(s)/opiate(s) drug, opioid(s)/opiate(s) medication, or opioid(s)/opiate(s)-containing substances of any type, nature, or kind, including all derivatives, all compounds or all degradation by-products thereof;
   b. Any **narcotic(s)** drug, **narcotic(s)** medication, or **narcotic(s)**-containing substances of any type, nature, or kind, including all derivatives, all compounds or all degradation by-products thereof;
   c. Any **narcotic(s)** controlled substances, including all derivatives, all compounds or all degradation by-products thereof, defined by or included in the United States Controlled Substances Act [21 U.S.C. § 801, *et seq.* (including its Schedules)] or any other regulatory, statutory, legislative, judicial or other legal action of any nation, state, province, municipality or other governmental division or subdivision; or
   d. Any naloxone medication, naloxone drug, naloxone compound(s) or naloxone-containing substances of any type, nature or kind, including all derivatives or all degradation by-products thereof.

2. The absence, failure or inadequacy or absence of any control required by any regulation, statute, ordinance, law, legislation, judicial or other legal act of any nation, state, province, municipality or other governmental division or subdivision to prevent or report suspicious behavior related to the actual or alleged use of, abuse of, misuse of, overdose of, distribution of, diversion of, risks of, absorption of, and/or addiction to any drug, medication or substance, including all derivatives or all degradation by-products thereof, referenced in 1.a., 1.b., 1.c. and 1.d. above;

3. The absence, failure or inadequacy of any recordkeeping controls, practices or procedures related to the actual or alleged use of, abuse of, misuse of, overdose of, distribution of, diversion of, risks of, absorption of, and/or addiction to any drug, medication or substance, including all derivatives or all degradation by-products thereof, referenced in 1.a., 1.b., 1.c. and 1.d. above;

4. The failure to warn or inadequacy or absence of any warnings, labels or instructions related to the actual or alleged use of, abuse of, misuse of, overdose of, distribution of, diversion of, risks of, absorption of, and/or addiction to any drug, medication or substance, including all

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

derivatives or all degradation by-products thereof, referenced in 1.a., 1.b., 1.c. and 1.d. above;

5. Advertisements, warranties, representations, misrepresentations, literature, marketing or informational materials related to any drug, medication or substance, including all derivatives or all degradation by-products thereof, referenced in 1.a., 1.b., 1.c. and 1.d. above; or

6. The absence, failure or inadequacy of any controls, practices or procedures related to the marketing, sale, storage, inventory, safeguarding, distribution, or diversion of any drug, medication or substance, including all derivatives or degradation by-products thereof, referenced in 1.a., 1.b., 1.c. and 1.d. above.

125. The 2019 Products Liability Policy contains following definition:

**Narcotic(s)** means, as defined by the United States Food and Drug Administration, 21 C.F.R. § 1300.01, *et seq.*, any of the following, whether produced directly or indirectly by extraction from substances of vegetable origin or independently by means of chemical synthesis or by a combination of extraction and chemical synthesis:

A. Opium, opiates, derivatives or opium and opiates, including their isomers, esters, ethers, salts, and salts of isomers, esters, and ethers whenever the existence of such isomers, esters, ethers and salts is possible within the specific chemical designation. Such term does not include the isoquinoline alkaloids of opium;

B. Poppy straw and concentrate of poppy straw;

C. Coca leaves, except coca leaves and extracts or coca leaves from which cocaine, ecgonine and derivatives of ecgonine or their salts have been removed;

D. Cocaine, its salts, optical and geometric isomers, and salts of isomers;

E. Ecgonine, its derivatives, their salts, isomers and salts of isomer; or

F. Any compound, mixture, or preparation which contains any quantity of any of the substances referred to in paragraphs (1) through (5) of this definition.

**J.     The 2019 Lawsuits**

126. Since May 2, 2019, Depomed has received notice of 136 additional opioid lawsuits (the "2019 Lawsuits").

127. Depomed seeks coverage for one or more of the 2019 Lawsuits under all three Product Liability Policies.

128. Navigators maintains it has no duty to defend or indemnify Depomed in the 2019 Lawsuits under any of the Policies.

FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

129.    The 2019 Lawsuits are not covered under the 2017 or 2018 Product Liability Policies because they were first made, within the meaning of those policies, after the Policies expired.

130.    The 2019 Lawsuits are not covered under the 2019 Product Liability Policy because the Absolute Opioid Exclusion precludes coverage for them.

131.    The 2019 Lawsuits are also not covered because they do not allege bodily injury caused by an occurrence, do not seek covered damages, or because the Banned Materials, Expected-Intended, Medical Services and Breach of Contract Exclusions preclude coverage.

## COUNT I

## NO DUTY TO DEFEND OR INDEMNIFY

## THE 2017 OPIOID LAWSUITS

132.    Navigators incorporates by reference the allegations in Paragraphs 1 through 131 above as if fully set forth herein.

133.    Depomed has tendered the 2017 Opioid Lawsuits to Navigators under the 2017 Product Liability Policy.

134.    The 2017 Product Liability Policy covers only **products-completed operations hazard claims**.

135.    It defines **products-completed operations hazard claim** as a "**claim** alleging a **products-completed operations hazard** and arising out of an **occurrence**."

136.    The 2017 Opioid Lawsuits do not include any **products-completed operations hazard claims** for at least two reasons.

137.    First, none of the claims pleaded in the 2017 Opioid Lawsuits are alleged to arise out of an **occurrence**.

138.    The 2017 Product Liability Policy defines **occurrence** as "an accident, including continuous or repeated exposure to the same general harmful conditions."

139.    The claims alleged in the 2017 Opioid Lawsuits do not arise out of accident but rather from Depomed's intentional conduct, and the plaintiffs' alleged damages were the foreseeable consequence of such conduct.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

140.   Second, none of the claims pleaded in the 2017 Opioid Lawsuits allege a **products-completed operations hazard**.

141.   The 2017 Product Liability Policy defines **products-completed operations hazard** as "**bodily injury** or **property damage** arising out of **your product** or **your work**."

142.   It further defines **bodily injury** as "physical harm, sickness or disease sustained by a person."

143.   The plaintiffs in the 2017 Opioid Lawsuits do not seek compensation for **bodily injury** but only for economic losses allegedly resulting from the impact of Depomed's product on their communities at large.

144.   The 2017 Product Liability Policy also contains the following applicable exclusions:

    a.   Exclusion C, which provides that the 2017 Product Liability Policy does not apply to claims based on or arising out of banned materials;

    b.   Exclusion D, which provides that the 2017 Product Liability Policy does not apply to claims based on or arising out of breach of warranties;

    c.   Exclusion F, which provides that the 2017 Product Liability Policy does not apply to claims "based on or arising out of criminal, dishonest, fraudulent or malicious conduct or acts of intentional wrongdoing";

    d.   Exclusion H, which provides that the 2017 Product Liability Policy does not apply to claims expected or intended by the insured; or

    e.   Exclusion M, which provides that the 2017 Product Liability Policy does not apply to claims based on or arising out of "medical services" as defined within the 2017 Product Liability Policy.

145.   **WHEREFORE**, Navigators is entitled to a declaration pursuant to 28 U.S.C. § 2201 that Navigators has no duty to defend or indemnify Depomed in the 2017 Opioid Lawsuits.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1

2

3

**COUNT II**

**NO DUTY TO DEFEND OR INDEMNIFY**

**THE 2018 AND 2019 ECONOMIC LOSS LAWSUITS**

4

5

146.     Navigators incorporates by reference the allegations in Paragraphs 1 through 145 above as if fully set forth herein.

6

7

147.     They 2018 and 2019 Product Liability Policies contain opioid exclusions that preclude coverage for the 2018 and 2019 Economic Loss Lawsuits.

8

9

148.     Depomed has therefore tendered the 2018 and 2019 Economic Loss Lawsuits to Navigators under the 2017 Product Liability Policy.

10

11

149.     The 2017 Product Liability Policy, however, covers only those claims first made during its policy period:  April 2, 2017 to April 2, 2018.

12

13

14

150.     A **claim** is deemed made during the **policy period** only if it arises out of a **circumstance** that Depomed reported to Navigators in writing during the **policy period** or it is first received by Depomed during the **policy period**.

15

16

151.     Depomed did not report any circumstance to Navigators between April 2, 2017 and April 2, 2018.

17

18

152.     Nor did Depomed first receive copies of the complaints in the 2018 and 2019 Economic Loss Lawsuits between April 2, 2017 and April 2, 2018.

19

20

21

153.     Therefore, the 2018 and 2019 Economic Loss Lawsuits were not first made between April 2, 2017 and April 2, 2018 and are not covered under the 2017 Product Liability Policy.

22

23

154.     Further, the 2017 Product Liability Policy covers only **products-completed operations hazard claims**.

24

25

155.     It defines **products-completed operations hazard claim** as a "**claim** alleging a **products-completed operations hazard** and arising out of an **occurrence**."

26

27

156.     The 2018 and 2019 Economic Loss Lawsuits do not include any **products-completed operations hazard claims** for at least two reasons.

28

- 23 -

4:19-CV-00255-HSG

FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

157.    First, none of the claims pleaded in the 2018 and 2019 Economic Loss Lawsuits are alleged to arise out of an **occurrence**.

158.    The 2017 Product Liability Policy defines **occurrence** as "an accident, including continuous or repeated exposure to the same general harmful conditions."

159.    The claims alleged in the 2018 and 2019 Economic Loss Lawsuits do not arise out of accident but rather from Depomed's intentional conduct, and the plaintiffs' alleged damages were the foreseeable consequence of such conduct.

160.    Second, none of the claims pleaded in the 2018 and 2019 Economic Loss Lawsuits allege a **products-completed operations hazard**.

161.    The 2017 Product Liability Policy defines **products-completed operations hazard** as "**bodily injury** or **property damage** arising out of **your product** or **your work**."

162.    It further defines **bodily injury** as "physical harm, sickness or disease sustained by a person."

163.    The plaintiffs in the 2018 and 2019 Economic Loss Lawsuits do not seek compensation for **bodily injury** but only for economic losses allegedly resulting from the impact of Depomed's product on their communities at large.

164.    The Product Liability Policies also contain the following applicable exclusions:

    a.   Exclusion C, which provides that the Product Liability Policies do not apply to claims based on or arising out of banned materials;

    b.   Exclusion D, which provides that the Product Liability Policies do not apply to claims based on or arising out of breach of warranties;

    c.   Exclusion F, which provides that the Product Liability Policies do not apply to claims "based on or arising out of criminal, dishonest, fraudulent or malicious conduct or acts of intentional wrongdoing";

    d.   Exclusion H, which provides that the Product Liability Policies do not apply to claims expected or intended by the insured; or

Troutman Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

e.  Exclusion M, which provides that the Product Liability Policies do not apply to claims based on or arising out of "medical services" as defined within the Product Liability Policies.

165.  **WHEREFORE**, Navigators is entitled to a declaration pursuant to 28 U.S.C. § 2201 that it has no duty to defend or indemnify Depomed in the 2018 and 2019 Economic Loss Lawsuits.

**COUNT III**

**NO DUTY TO DEFEND OR INDEMNIFY THE**

**2018 BODILY INJURY LAWSUITS**

166.  Navigators incorporates by reference the allegations in Paragraphs 1 through 165 above as if fully set forth herein.

167.  Depomed has tendered the 2018 Bodily Injury Lawsuits to Navigators under the 2017 and 2018 Product Liability Policies.

168.  The 2017 Product Liability Policy covers only those claims first made during its policy period:  April 2, 2017 to April 2, 2018.

169.  A **claim** is deemed made during the **policy period** only if it arises out of a **circumstance** that Depomed reported to Navigators in writing during the **policy period** or it is first received by Depomed during the **policy period**.

170.  Depomed did not report any circumstance to Navigators between April 2, 2017 and April 2, 2018.

171.  Nor did Depomed first receive copies of the complaints in the 2018 and 2019 Economic Loss Lawsuits between April 2, 2017 and April 2, 2018.

172.  Therefore, the 2018 Bodily Injury Lawsuits were not first made between April 2, 2017 and April 2, 2018 and are not covered under the 2017 Product Liability Policy.

173.  Further, both the 2017 and 2018  Product Liability Policies cover only **products-completed operations hazard claims**.

174.  The 2018 Bodily Injury Lawsuits do not include any **products-completed operations hazard claims**.

175.    The 2017 and 2018 Product Liability Policies define **products-completed operations hazard claim** as a "**claim** alleging a **products-completed operations hazard** and arising out of an **occurrence**."

176.    They further define **occurrence** as "an accident, including continuous or repeated exposure to the same general harmful conditions."

177.    The claims alleged in the 2018 Bodily Injury Lawsuits do not arise out of accident but rather from Depomed's intentional conduct, and the plaintiffs' alleged damages were the foreseeable consequence of such conduct.

178.    The 2017 and 2018 Product Liability Policies also contain the following applicable exclusions:

a.    Exclusion C, which provides that the 2017 and 2018 Product Liability Policies do not apply to claims based on or arising out of banned materials;

b.    Exclusion D, which provides that the 2017 and 2018 Product Liability Policies do not apply to claims based on or arising out of breach of warranties;

c.    Exclusion F, which provides that the 2017 and 2018 Product Liability Policies do not apply to claims "based on or arising out of criminal, dishonest, fraudulent or malicious conduct or acts of intentional wrongdoing";

d.    Exclusion H, which provides that the 2017 and 2018 Product Liability Policies do not apply to claims expected or intended by the insured; or

e.    Exclusion M, which provides that the 2017 and 2018 Product Liability Policies do not apply to claims based on or arising out of "medical services" as defined within the 2017 and 2018 Product Liability Policies.

179.    **WHEREFORE**, Navigators is entitled to a declaration pursuant to 28 U.S.C. § 2201 that it has no duty to defend or indemnify Depomed for the 2018 Bodily Injury Lawsuits.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

## COUNT IV

### NO DUTY TO DEFEND OR INDEMNIFY THE

### 2019 BODILY INJURY LAWSUITS

180.    Navigators incorporates by reference the allegations in Paragraphs 1 through 179 above as if fully set forth herein.

181.    Depomed has tendered the 2019 Bodily Injury Lawsuits to Navigators under the 2017, 2018 and 2019 Product Liability Policies.

182.    The 2017 and 2018 Policies cover **claims** first made during the **policy period**.

183.    A **claim** is deemed made during the **policy period** only if it arises out of a **circumstance** that Depomed reported to Navigators in writing during the **policy period** or it is first received by Depomed during the **policy period**.

184.    The 2017 Product Liability Policy's period expired on April 2, 2018.

185.    The 2018 Product Liability Policy's period expired on May 2, 2019.

186.    Depomed did not report any circumstance to Navigators prior to May 2, 2019.

187.    Nor did it receive a copy of the 2019 Bodily Injury Lawsuits prior to May 2, 2019.

188.    Therefore, they are not covered under the 2017 and 2018 Product Liability Policies.

189.    The 2019 Bodily Injury Lawsuits were first made during the 2019 policy period.

190.    However, the 2019 Product Liability Policy contains an absolute opioid exclusion.

191.    This exclusion precludes coverage for the 2019 Bodily Injury Lawsuits under the 2019 Product Liability Policy.

192.    The 2019 Product Liability Policy also contains the following applicable exclusions:

    a.    Exclusion C, which provides that the 2019 Product Liability Policy does not apply to claims based on or arising out of banned materials;

    b.    Exclusion D, which provides that the 2019 Product Liability Policy does not apply to claims based on or arising out of breach of warranties;

c. Exclusion F, which provides that the 2019 Product Liability Policy does not apply to claims "based on or arising out of criminal, dishonest, fraudulent or malicious conduct or acts of intentional wrongdoing";

d. Exclusion H, which provides that the 2019 Product Liability Policy does not apply to claims expected or intended by the insured; or

e. Exclusion M, which provides that the 2019 Product Liability Policy does not apply to claims based on or arising out of "medical services" as defined within the 2019 Product Liability Policy.

193. **WHEREFORE**, Navigators is entitled to a declaration pursuant to 28 U.S.C. § 2201 that the 2019 Bodily Injury Lawsuits are not covered under any of the Navigators Product Liability Policies and therefore, Navigators has no duty to defend or indemnify Depomed in them.

**(IN THE ALTERNATIVE)**

**COUNT V**

**MISREPRESENTATION/ESTOPPEL**

194. Navigators incorporates by reference the allegations in Paragraphs 1 through 193 above as if fully set forth herein.

195. To the extent the Opioid Lawsuits are covered under one or more of the Product Liability Policies, Depomed is estopped from seeking coverage for them.

196. In connection with the underwriting of the 2017 and 2018 Product Liability Policies, Depomed represented to Navigators that its opioid product, Nucynta, was less addictive than other opioid products.

197. Additionally, in connection with the underwriting of the 2018 Product Liability Policy, Depomed failed to advise of the existence of the 2017 Opioid Lawsuits or that it believed the suits were covered under the terms of the 2017 Product Liability Policy.

198. These representations and omissions were material.

199. But for these representations and omissions, Navigators would not have agreed to insure Nucynta's opioid business under the 2017 and 2018 Product Liability Policies.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

200.    Therefore, Depomed is estopped from seeking coverage under the 2017 and 2018 Product Liability Policies for claims arising out of its opioid products.

201.    **WHEREFORE**, Navigators is entitled to a declaration pursuant to 28 U.S.C. § 2201 that Depomed is estopped from seeking coverage under the 2017 and 2018 Product Liability Policies for claims arising out of Depomed's opioid products.

## <u>COUNT VI</u>

### <u>ALLOCATION OF DEFENSE COSTS</u>

202.    Navigators incorporates by reference the allegations in Paragraphs 1 through 201 above as if fully set forth herein.

203.    To the extent Navigators has a duty to defend Depomed, it is responsible only for the reasonable and necessary costs of defending potentially covered claims.

204.    **WHEREFORE**, Navigators is entitled to an allocation of defense costs between potentially covered claims and claims for which there is no potential of coverage.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Navigators prays that this Honorable Court find and declare the rights and duties of the parties, and specifically find and declare:

a.   That Navigators owes no duty to defend or indemnify Depomed with respect to the 2017 Opioid Lawsuits.

b.   That Navigators owes no duty to defend or indemnify Depomed with respect to the 2018 and 2019 Economic Loss Lawsuits.

c.   That Navigators owes no duty to defend or indemnify Depomed with respect to the 2018 Bodily Injury Lawsuits.

d.   That Navigators owes no duty to defend or indemnify Depomed with respect to the 2019 Bodily Injury Lawsuits.

e.   In the alternative, that Depomed is estopped from seeking coverage under the Product Liability Policies for claims arising out of its false representations; or

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

f.  In the alternative, that Navigators is entitled to allocation between covered and uncovered costs with respect to the Opioid Lawsuits.

g.  For all such other or further relief as the Court deems just and proper.

### JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Navigators demands trial by jury in this action of all issues so triable.

Dated:  August 12,  2019

Respectfully submitted,
TROUTMAN SANDERS LLP


By: */s/ Kevin Kieffer*
Kevin F. Kieffer
Ross Smith
TROUTMAN SANDERS LLP

Joseph A. Hinkhouse
Colleen P. Sorensen
Michelle L. Goyke
HINKHOUSE WILLIAMS WALSH LLP

Attorneys for Plaintiff
Navigators Specialty Insurance Company

FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT